Filed 12/4/14  In re N.S. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re N.S., et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E061142 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J252823 & J252824) |
| v. | OPINION |
| J.S., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lily L. Sinfield, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Jeffrey L. Bryson, Deputy County Counsel, for Plaintiff and Respondent.

The juvenile court declared minors, N.S. (born 1999) and N.Y.S. (born 2002), dependents of the court, removed them from the custody of defendant and appellant J.S.

1

(father), and placed them with their mother under family maintenance services.[1]  The juvenile court additionally denied father reunification services finding, pursuant to Welfare and Institutions Code section 361, subdivision (b)(6),[2] that N.Y.S. had been adjudicated a dependent of the juvenile court as a result of severe sexual abuse by father.  Father appeals, contending insufficient evidence supports the order denying him reunification services.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY

On January 14, 2014, a social worker with plaintiff and respondent San Bernardino County Children and Family Services (CFS) responded to a referral regarding the purported sexual molestation of N.Y.S. by father.  N.Y.S. reported that from November 2013, father began sexually molesting her.  The incidents included father tongue kissing her, taking showers with her naked, attempting penile penetration of her vagina and anus, digital penetration, compelling her to masturbate him, forcing her to perform onanism while father watched and masturbated, compelling her to perform oral copulation on him, and performing oral copulation on her.  N.Y.S. reported the sexual abuse occurred daily between 7:10 a.m. and 8:30 a.m. after her brother, N.S., had left for school and prior to when she needed to leave for school.

On January 17, 2014, the juvenile court detained minors.  In the jurisdiction and disposition report filed on February 4, 2014, the social worker reported that father denied

---

[1]  Mother is not a party to the appeal.

[2]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

all of N.Y.S.'s allegations. Father said N.Y.S. must have been coached to make the allegations by father's ex-girlfriend. Mother's whereabouts were unknown.

N.Y.S. reported being much happier now that she was out of father's home. A forensic interview and medical examination of N.Y.S. was conducted at the Child Assessment Center on January 17, 2014. The forensic interview reflected "very detailed information which is highly suggestive for sexual abuse." N.Y.S did not wish to have any visits with father.

N.S. had been observed to begin shaking badly and became very frightened when father had approached him at the detention hearing. N.S. was worried about being returned to father's care.

Mother was later found living in the San Francisco Bay area. She had been having only intermittent contact with minors for some time. Mother entered into mediation with CFS in which some of the allegations in the petitions would be dismissed and another allegation amended in return for mother's submission on the petitions and placement of minors with mother under family maintenance services.

In an addendum report, minors reported they wanted to live with mother. N.Y.S. continued to refuse visitation with father. In another addendum report, CFS recommended the court deny reunification services to father as a result of the alleged severe sexual molestation of N.Y.S. CFS subsequently informed the court N.S. had come home from a visit with father shaking and saying "'don't talk, don't talk'" which they interpreted as father telling N.S. not to talk. N.S., who is autistic, disclosed through gestures that he had seen father have sex with N.Y.S.: "[H]e demonstrated in detail what

3

he saw."

Father failed to appear at the jurisdiction hearing on April 14, 2014.[3]  The juvenile

court found the allegations in the amended petitions true.  At the disposition hearing on

April 30, 2014, the juvenile court removed minors from father's custody, declared minors

dependents of the court, and returned minors to mother's custody under the supervision

of CFS with mother participating in family maintenance services.  The court  denied

father reunification services pursuant to section 361.5, subdivision (b)(6).

## DISCUSSION

Father contends insufficient evidence supports the juvenile court's order denying

him reunification services.  We disagree.

"Reunification services need not be provided to a parent or guardian described in

this subdivision when the court finds, by clear and convincing evidence," "[t]hat the child

has been adjudicated a dependent . . . as a result of severe sexual abuse . . . to the child"

and/or a sibling "and the court makes a factual finding that it would not benefit the child

to pursue reunification services with the offending parent or guardian."  (§ 361.5, subd.

(b)(6).)  "A finding of severe sexual abuse . . . may be based on . . . sexual intercourse, or

stimulation involving genital-genital, oral-genital, anal-genital, or oral-anal contact, . . .

between the parent . . . and the child or a sibling . . . for the sexual gratification of the

parent . . . ."  (*Ibid*.)

"In determining whether reunification services will benefit the child pursuant to

---

[3]  At the disposition hearing, father's counsel indicated father had confused the
date of the jurisdiction hearing with the date he was supposed to report to jury duty.

4

paragraph (6) . . . of subdivision (b), the court shall consider any information it deems relevant, including the following factors: [¶] (1) The specific act or omission comprising the severe sexual abuse or the severe physical harm inflicted on the child or the child's sibling . . . . [¶] (2) The circumstances under which the abuse or harm was inflicted on the child or the child's sibling . . . . [¶] (3) The severity of the emotional trauma suffered by the child or the child's sibling . . . . [¶] (4) Any history of abuse of other children by the offending parent . . . . [¶] (5) The likelihood that the child may be safely returned to the care of the offending parent or guardian within 12 months with no continuing supervision. [¶] (6) Whether or not the child desires to be reunified with the offending parent or guardian." (§ 361.5, subd. (i)(1)-(6).)

"""'[O]nce it is determined one of the situations outlined in [section 361.5,] subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources. [Citation.]'" [Citation.]' [Citation.] Thus, '[t]he court shall not order reunification for a parent . . . described in [section 361.5, subdivision (b)(6) or (7)] unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child.' [Citation.] 'The burden is on the parent to . . . show that reunification would serve the best interests of the child.' [Citation.] The best interests determination encompasses a consideration of the parent's current efforts, fitness and history; the seriousness of the problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity. [Citation.] A best interests finding also requires a likelihood that reunification services will succeed. [Citation.] 'In

other words, there must be some "reasonable basis to conclude" that reunification is possible before services are offered to a parent who need not be provided them. [Citation.]' [Citation.]" (*In re A.G.* (2012) 207 Cal.App.4th 276, 281.)

"We review an order denying reunification services by determining if substantial evidence supports it. [Citation.] In doing so, we resolve all conflicts in the evidence in favor of the juvenile court's finding. [Citation.]" (*In re S.B.* (2013) 222 Cal.App.4th 612, 623.)

Here, substantial evidence supports the juvenile court's determination that section 361.5, subdivision (6) was applicable. Father had engaged in varying acts of sexual abuse against his then 11-year-old daughter on a daily basis for approximately two months. N.Y.S.'s disclosures during the CAC interview were extremely detailed and highly disturbing. She reported father would tell her he was "excited for her to get older so that he [could] 'do more things to her as a woman.'" N.Y.S. refused any offer to see father and stated that she never wished to live with him again. N.S. had apparently witnessed at least one sexual incident between father and N.Y.S. N.S. was visibly shaking with fear when around father on at least two occasions during the proceedings.

Father disavowed all the allegations: "Such denial on the part of a parent usually [indicates] a poor prognosis for family reunification, as any child will always remain at extreme high risk for abuse or neglect." Father had apparently told N.S. not to reveal what he had witnessed to anyone. Likewise, father had told N.Y.S. not to tell anyone what he did to her because he would go to prison and she would be put in foster care. Father's sister had attempted to get N.Y.S. to recant the allegations when speaking to her

6

by telephone at the foster parent's home.  Nearly every circumstance itemized under section 361.5, subdivision (i)(1) through (6) was applicable in this case.  Sufficient evidence supported the juvenile court's denial of reunification services for father.

Father exposits *In re I.J.* (2013) 56 Cal.4th 766, *In re Andy G.* (2010) 183 Cal.App.4th 1405, and *In re Karen R.* (2001) 95 Cal.App.4th 84, for the proposition that reunification services may properly be ordered for a parent who sexually molested a minor.  However, all of these cases dealt with jurisdictional findings, not dispositional orders such as an order regarding reunification services.  (*I.J.*, at pp. 771-772, 778; *Andy G.*, at pp. 1407, 1409-1410, 1415; *Karen R.*, at pp. 88-89. 91.)  "'[I]t is axiomatic that cases are not authority for propositions not considered.'  [Citation.]"  (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1160.)  In any event, the fact that reunification services *may* be ordered to an offending parent is not commensurate with a requirement that the juvenile court *must* offer such services.  Here, substantial evidence supported the court's finding that N.Y.S. was severely sexually abused by father, and father failed to prove that reunification services would benefit minors.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON<br>J.

We concur:

HOLLENHORST<br>
         Acting P. J.

RICHLI<br>
         J.

7